FILED

**IN THE UNITED STATES DISTRICT COURT** AUG 21 PM 12: 42
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| EX. REL. MEGAN RUMBLE, | ) |
| STATE OF CALIFORNIA, | ) |
| STATE OF CONNECTICUT, | ) |
| STATE OF COLORADO, | ) |
| DISTRICT OF COLUMBIA, | ) |
| STATE OF FLORIDA, | ) |
| STATE OF GEORGIA, | ) |
| STATE OF ILLINOIS | ) |
| STATE OF INDIANA, | ) |
| STATE OF IOWA, | ) |
| STATE OF LOUISIANA, | ) |
| STATE OF MARYLAND, | ) |
| STATE OF MASSACHUSETTS, | ) |
| STATE OF MICHIGAN, | ) |
| STATE OF MINNESOTA, | ) |
| STATE OF NEVADA, | ) |
| STATE OF NEW HAMPSHIRE, | ) |
| STATE OF NEW JERSEY, | ) |
| STATE OF NEW MEXICO, | ) |
| STATE OF NEW YORK, | ) |
| STATE OF NORTH CAROLINA, | ) |
| STATE OF OKLAHOMA, | ) |
| STATE OF RHODE ISLAND, | ) |
| STATE OF TENNESSEE, | ) |
| STATE OF TEXAS, | ) |
| STATE OF VIRGINIA, | ) |
| | ) |
| PLAINTIFFS, | ) |
| | ) |
| v. | ) Case No.: 6:17cv1522-orl 31KRS |
| | ) |
| VALEANT PHARMACUTICALS | ) |
| NORTH AMERICA, LLC, a Deleware for | ) |
| Profit Corporation , | ) |
| ORAPHARMA, INC. , a Delaware for | ) |
| Profit Corporation | ) **FILED UNDER SEAL** |
| | ) |
| DEFENDANTS, | ) **DO NOT PLACE IN PRESSBOX** |
| | ) **DO NOT ENTER ON PACER** |
| | ) **JURY DEMANDED** |

---

### QUI TAM COMPLAINT

---

Plaintiff – Relator Megan Rumble, on behalf of herself and the United States of America, State of California, State of Connecticut, State of Colorado, District of Columbia, State of Florida, State of Georgia, State of Illinois, State of Indiana, State of Iowa, State of Louisiana, State of Maryland, State of Massachusetts, State of Michigan, State of Minnesota, State of Nevada, State of New Hampshire, State of New Jersey, State of New Mexico, State of New York, State of North Carolina, State of Oklahoma, State of Rhode Island, State of Tennessee, State of Texas, State of Virginia,  allege and claim against the Defendants Valeant Pharmaceuticals North America, LLC, and OraPharma, Inc., as follows:

### JURISDICTION AND VENUE

1.      This action arises under the False Claims Act, 31 U.S.C. Section 3729-33 (the "False Claims Act").  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. Section 1331. Jurisdiction is also appropriate under 31 U.S.C. Section 3732(a).

2.      Venue lies in this judicial district pursuant to 31 U.S.C. Section 3732(a), because Defendants qualify to do business in the State of Florida, transact substantial business in the State of Florida, and transact substantial business in this judicial district.  Furthermore, Defendants committed within this judicial district acts proscribed by 31 U.S.C. Section 3729, to wit: Defendants submitted, caused to be submitted, and conspired to submit to the United States and various states plaintiff States, false claims for payment of pharmaceuticals.

### PARTIES

3.      Megan Rumble, an individual, is a resident of Denver, Colorado.

3

4.    Valeant Pharmaceuticals North America, LLC ("Valeant"), is a Delaware Limited Liability Company, registered and authorized to conduct business in Florida and all states. Valeant is a corporate subdivision of Valeant Pharmaceuticals International, Inc., a Canadian For Profit Corporation, who serves as Valeant's corporate manager. Valeant has a principle address of 400 Somerset Corporate Blvd, Bridgewater, New Jersey, 08807. Valeant has a registered agent for service of process listed as C T Corporation System, 1200 South Pine Island Road, Plantation, Florida, 33324.

5.    OraPharma, Inc. ("OraPharma"), is a Delaware for Profit Corporation, registered and authorized to conduct business in Florida and all states. OraPharma is a corporate subsidiary of Valeant after its purchase by the same in 2012. OraPharma has a principle address of 400 Somerset Corporate Blvd, Bridgewater, New Jersey, 08807. OraPharma has a registered agent for service of process listed as C T Corporation System, 1200 South Pine Island Road, Plantation, Florida, 33324.

## FACTS COMMON TO ALL

6.    Megan Rumble is an individual residing in Denver, Colorado.

7.    Relator Rumble is an employee of Valeant, and works as a as a sales representative for Valeant's products Arestin and Neutrasal, among others, through its subsidiary OraPharma.

8.    Valeant has sought through its agents and sub-divisions to market and sell various pharmaceuticals into the United States.

9.    OraPharma is a wholly owned subsidiary of Valeant Pharmacueticals, and thus is subject to its management and control.

10.    Annually, millions of prescriptions are written for OraPharma's products going under the trade names Arestin (*Minocycline Hydrochloride*), and Neutrasal (*Supersaturated*

4

*Calcium Phosphate Rinse*). Many of these prescriptions are paid for by Medicare, Medicaid, Tricare, Federal Employee Insurance programs, and the Veterans Affairs Pharmacy programs, or are covered with funds from these programs and commercial co-insurance. As such, thousands of transactions concerning these pharmaceuticals are paid for using Federally sourced funds annually. The Relator has attached numerous spreadsheets that reveals these sales, and several reports which provide detailed breakdowns of the insurers, PBMs, and Federal Programs involved in these transactions. These spreadsheets and reports have also been filtered to display everytime there is a federal program involved, as is relevant to the determination of the amount of illegal transactions and kickbacks involved. (*See* Composite Exhibit "A" (original Arestin spreadsheets), Composite Exhibit "B" (original Neutrasal spreadsheets), Composite Exhibit "C" (highlighted and filtered Arestin spreadsheets), Composite Exhibit "D" (highlighted and filtered Neutrasal spreadsheets), Exhibit "A" (Arestin Master Claim Sheet), and Exhibit "B" (Neutrasal Master Claim Sheet).)

11.     During her employment with OraPharma, Megan Rumble became aware that certain aspects of Valents marketing, consulting and sales operations may violate Federal Healthcare regulations such as the False Claims Act and Federal Anti-Kickback Statute, as well as relevant state statutes.

12.     Specifically, OraPharma coaches its employees to advocate for its prescriptions using several fraudulent means, including but not limited to, 1. Coaching prescribers to unbundle medications, 2. Marketing products without medical necessity, and advocating uses for the products which have little to no relevant medical use (Neutrasal), 3. Seeking to employ those clinicians such as Registered Dental Hygenists who are in a position to influence the prescriptions written, and in some cases incentizing them as the actual prescribers to write for the company, 4. Encouraging prescribers to use "Master-Copy" prefilled prescriptions which only need the patient

information filled in to ease prescription writing, which often leads to unauthorized prescriptions, and 5. Paying kickbacks to sales representatives based on submissions and progress to sales goals for prescriptions being paid for either partly or wholly with Federal Government Resources, which violates the Federal Anti-Kickback statute.

13. As a key to the success of these schemes, Valeant through OraPharma sought to employee Dental Hygenists across the country as sales representatives, and in some cases direct prescribers of their medications Arestin and Neutrasal, as is the case for example in Colorado, where hygenists have limited prescribing power. This is designed to give the sales representatives influence over the prescribers, and to influence how prescriptions are written and for what conditions they are written for to enrich Valeant and its representatives, by offering kickbacks on claims. Additionally, Valeant encouraged these hygenists and sales representatives to write or obtain prescriptions for themselves, regardless of the medical necessity for these products in order to increase sales. Each of these transactions written without the proper authorization or medical necessity is a false claim.

14. The scope of the fraudulent schemes as described *infra* is accomplished by paying commissions to employed sales representatives for the company, for prescriptions written for Arestin and Neutrasal, even when such sales are made to Federal Health Care entities and programs, or co-insurers.

15. Valeant incentivized these employees by paying them commissions even on the products which they filled themselves, and those without medical necessaity.

16. Valeant incentized said employees in some cases (Neutrasal generally & Q2 2017 Arestin) simply based on prescriptions written ("submission model"), not even taking into account which ones were filled.

17. At all times relevant to this Complaint Relator Megan Rumble was able to access and review documentation relating to transactions and sales data involving these prescriptions, including the information about what payor actually paid for these prescriptions, including Federal Healthcare funds, such as those administered by Medicare, Medicaid, Tricare, Veterans Affairs and Federal employee health insurance programs in addition to commercial co-insurers.

## FALSE CLAIMS RELATING TO ARESTIN

### Unbundling

18. One of the common schemes employed by Valeant, and as implemented through its retained consultants and sales representatives involves the strategic unbundling of arestin prescriptions prescribed to exhaust individual patient's insurance deductibles through manufacturer's co-pay assistance programs, before then increasing the orders after a patients deductible is exhausted.

19. In essence, the scheme was to first prescribe Arestin to as many patients as possible, to support Valeant by selling one of its medications in the maximum quantities feasible.

20. Valeant then would have its affiliated prescribers and providers, as set up through the relationships with hygenists and sales representatives who in many cases also worked in the prescribing dental office, prescribe amounts of arrestin in limited amounts so that the patient would avoid paying large prescriptions, and to ensure that the representative got credit. Where there are federal funds involved, there is no manufacturers co-pay assistance available, but the representatives will still get commission credit, even if there is federal money involved.

21. Based on information and belief, this practice enriches Valeant, its managers and sales representatives, while potentially degrading the patients' oral health because it artificially limits the amount of sites which are treated in the patients mouth. As such, there is an implicit

conflict between the patients' best interest which likely favors the higher numbers of tips called for, and the sales representatives individual incentive to unbundle to ensure claims actually get submitted for filling.

22.     This is evidenced by the attached supplied Arestin sales tracking spreadsheets attached hereto as Composite Exhibits "A" & "C."[1] For example, when these spreadsheets are filtered by region code, then by patient name, then by date, then by prescribed quantity, a pattern emerges which shows that often patients will be prescribed a large number of tips, then the sales representative or another company actor (often working in the clinic) will coach the prescriber to write smaller amounts, and this is the prescription that gets filled.

23.     This practice allows Valeant through its OraPharma reps to artificially unbundle claims which can be detrimental to patient health, to maximize the number of Arestin prescriptions actually filled, to benefit the company and the sales representatives, which for all relevant claims made in this Complaint is some Federal Health Care program, such as Medicare, Medicaid, Tricare, Federal Employee Insurance Programs and the Veterans Affairs Administration. Additionally, and as explained further in the Relator's Disclosure statement, when the original claim spread sheets (Composite Exhibit "A") for Arestin are filtered to show where "subsidy eligible" is "N" for no, this means that there is no manufacturers copay assistance available, because there are Federal Health Care dollars involved. When this is the case, and there is any sale amount and any commercial co-insurer of PBM is involved, the company considers the transaction

---

[1] Composite Exhibits A and C refer to the Arestin Sales Tracking Spreadsheets, with Exhibit A being the original spreadsheets in an unaltered condition, and Exhibit C being those spreadsheets which have been reviewed and formatted to reflect where federal funds are facially present. The data from these sheets has been compiled into Master Claim Sheets for Arestin, attached hereto as Exhibit "A." As is stated Infra., these master claim sheets do not identify all the fraud present in these schemes, as it excludes fraudulent transactions and kickbacks relating to the presence of co-insurance or a commercial PBM, that do not appear to involve federal dollars on their faces.

to be compensable to the Sales Representatives, and there are illegal kickbacks paid out, as is detailed in Paragraphs 33-41 below.

24.     As such, all transactions presented in the Arestin Master Claims Sheets, attached hereto as Exhibit "A", which show a pattern of high initial prescription amount, then a lower prescription amount filled by the patient, evidence the unbundling scheme that Valeant has engineered and orchestrated with its Sales Representatives.

## FALSE CLAIMS RELATING TO NEUTRASAL

### Lack of Medical Necessity

25.     The other primary medication at issue in this complaint involves Neutrasal, an oral rinsing powder agent comprised of Supersaturate Calcium Phosphate.

26.     Neutrasal is commonly prescribed and indicated for those who experience oral mucositis, which is a common side effect of radiation and cancer treatments.

27.     There are many similar products for those who experience drymouth which are not cancer treatment related which are available at much cheaper prices, and are just as effective in non-cancer treatment related settings.

28.     As such, Neutrasal is not medically necessary for those with ordinary conditions leading to dry mouth, and would be deemed inappropriate to prescribe to patients without advanced conditions such as cancer under treatment.

29.     This is evidenced by the Company's own statements that Neutrasal is used "along with standard oral care to treat oral mucositis caused by radiation or high-dose chemotherapy. It relieves the symptoms of oral mucositis."[2]

---

[2] Exhibit "C" – About Neutrasal (OraPharma material)

9

30.     Despite this fact, Valeant, through its sales force of representatives, including the previously described hygienist/drug rep combination employees, are encouraged to market Neutrasal products to their prescribing partners in Dentist offices across the country, and are even encouraged to be prescribed or self prescribe this medication in states where Hygenists have that ability.

31.     As such, the transactions touching or concerning Medicare, Medicaid, Tricare, Federal Employee Health Insurance Programs or the Veterans Administration, are all fraudulent to the extent that the patient lacks the medical necessity for these treatments. Additionally, to the extent that the spreadsheets attached as Composite Exhibits "B" and "D", reflect any Neutrasal submission whether filled or not, and the sheets are filtered to select where subsidy eligible is "N", this is considered a transaction where the company will pay a commission out on these claims, even if the same transaction involves purely federal funds, or those which are filled with a co-insurer.[3]

32.     Based on information and belief, those transactions identified in Exhibit "B" as Neutrasal transactions concerning facially Federal dollars are all fraudulent, as these prescriptions are being written without corresponding diagnoses of Cancer or a similarly serious presenting condition, and are almost always written in a simple dental setting by a Dentist or Hygenist. Additionally, as described above, and further detailed in the Relator Statement, many more transactions than those listed in the Neutrasal Master Claim sheet, such as those with no subsidy

---

[3] Similar to Arestin, Composite Exhibits B and D refer to the Neutrasal Sales Tracking Spreadsheets, with Exhibit B being the original spreadsheets in an unaltered condition, and Exhibit D being those spreadsheets which have been reviewed and formatted to reflect where federal funds are facially present. The data from these sheets has been compiled into Master Claim Sheets for Neutrasal, attached hereto as Exhibit "B." As is stated above and below., these master claim sheets do not identify all the fraud present in these scehemes, as they exclude fraudulent transactions and kickbacks relating to the presence of co-insurance or a commercial PBM, that do not appear to involve federal dollars on their faces.

eligible, and filled with co-insurance, also violate the False Claims Act, and result in kickbacks, as described below.

## IMPROPER KICKBACKS RELATING TO ARESTIN

33.    Relator incorporates preceding paragraphs 6-24 by reference as if fully set forth herein.

34.    As previously described, the Relator in this matter has information and documentation or fraudulent prescribing practices related to Arestin. Additionally, the Relator has knowledge and documentation reflecting the existence of an illegal scheme by Valeant to incentivize sales representatives, many of them dental hygienists working for the prescribing dentists, to earn a commission for all of their prescriptions of Arestin, regardless of whether these sales touch or concern Federal Health Care funds.

35.    As such, to the extent that the transactions attached hereto as a spreadsheet in Composite Exhibits "A" and "C" and Exhibit "A" demonstrate that sales occurred, commissions were paid out to hygienists and other sales representatives for sales made touching or concerning Federal Health Care funds, each and every one of these transactions is a violation of the Federal Anti Kickback Statute. Further, as described in the relator statement, where there are no subsidies eligible from the manufacturer, by filtering the original spreadsheets to reflect "N" under subsidy eligible, every one of these transactions involves Federal Dollars, and where a commercial co-insurer is involved or any commercial PBM handles the transcation the company will pay a commission out to the sales rep. This is despite the fact that these trasnactions involve federal funds.

36.    Additionally, as described above, actors within the company, including relator's supervisor Bill Rorer have admitted that sales representatives are eligble for commissions as

described above, when any commercial PBM or co-insurer is involved, even though federal funds are involved. This is supported by the Relator's statement in this matter, and additionally by the email attached hereto as Exhibit "D", which specifies that the company regards these type of transactions as "commercial" and thus these transactions contribute towards the sales representatives commission goals and awards. As such, these transactions touch and concern federal healthcare dollars, and are the subject of kickbacks which violate the Federal Anti Kickback statute.

37.    Finally, during some periods of time, including but not limited to Quarter 2, 2017, OraPharma sales representatives were paid commissions specifically tied to Arestin sales on a submission only basis, where commissions were paid even if these prescriptions were not filled.

## IMPROPER KICKBACKS RELATING TO NEUTRASAL

38.    Relator incorporates preceding paragraphs 6-16, and 25-32 by reference as if fully set forth herein.

39.    As previously described, the Relator in this matter has information and documentation of fraudulent prescribing practices related to Neutrasal. Additionally, the Relator has knowledge and documentation reflecting the existence of an illegal scheme by Valeant to incentivize sales representatives, many of them dental hygenists working for the prescribing dentists, to earn a commission for all of their prescriptions of Neutrasal, regardless of whether these sales touch or concern Federal Health Care funds, and including prescriptions for themselves or family members.

40.    As such, to the extent that the transactions attached hereto as a spreadsheet in Composite Exhibits "B" and "D" demonstrate that a submission occurred, commissions were paid out to hygenists and other sales representatives for sales made touching or concerning Federal

Health Care funds, each and every one of these transactions is a violation of the Federal Anti Kickback Statute. Further, as described in the relator statement, where there are no subsidies eligible from the manufacturer, by filtering the original spreadsheets to reflect "N" under subsidy eligible, every one of these transactions involves Federal Funds. However, whenever there is a commercial co-insurer or PBM present in the transaction, the company will pay a commission out to the sales rep on the basis that this transaction is considered "commercial." This is despite the fact that these trasnactions involve federal funds, and should thus properly be deemed commercial. With Neutrasal specifically, there needn't be any sale at all for there to be a commission paid out; the reps are paid simply for submissions.

41.    As previously described in Paragraph 36, where these spreadsheets indicate that a claim is "commercial" in nature, yet still involves federal funds by a Federal Program or part D provider, these claims are still eligible for compensation by the company in the form of commissions which are violative of the Federal Anti Kickback Statute.

## APPLICABLE LAWS

### The Federal Anti Kickback Statute

42.    The Federal Anti-Kickback Statutes makes it a crime to knowingly and willfully offer, pay, solicit or receive any remuneration to induce a person:

      a.    To refer an individual to a person for the furnishing of any item or service covered under a federal health care program; or

      b.    To purchase, lease, order, arrange for or recommend any good, facility, service or item covered under a federal health care program.

42 U.S.C. Section 1320a-7b(b)(1) and (2).

43.     The term "any remuneration" encompasses any kickback, bribe or rebate, direct or indirect, overt or covert, in cash or in kind.  42 U.S.C. Section 1320a-7b(b)(1).

44.     Violations of the federal Anti-Kickback Statute must be knowing and willful.  42 U.S.C. Section 1320a-7b(b)(1). An act is willful if "the act was committed voluntarily and purposely, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard the law." United States v. Starks, 157 F. 3d 833, 837-8 (11th Cir. 1998).

45.     The federal Anti-Kickback Statute has been interpreted to cover any arrangement which one purpose of the remuneration was to obtain money for the referral of services or to induce further referrals.  United States v. Gerber, 760 F. 2d 68 (3rd Cir.), cert. denied, 474 U.S. 988 (1985). Moreover, payments made to physicians to induce referrals, even if also intended to compensate for professional services, violate the Anti-Kickback Statutes.  United States ex. rel Pogue v. Diabetes Treatment Centers of America, 2008 U.S. District LEXIS 554 [*23] (D.C. Cir. 2008).

46.     A violation of the federal Anti-Kickback Statute constitutes a felony punishable by a maximum fine of $25,000.00, imprisonment up to five years, or both.  Any party convicted under the federal Anti-Kickback Statutes must be excluded from federal Health Care Programs for a term of at least five (5) years.  42 U.S.C. Section 1320a7(a)(1).

47.     Even without a conviction, if the Secretary of HHS finds administratively that a provider has violated the federal Anti-Kickback Statute, the Secretary may exclude that provider from federal health care programs for a discretionary period, and may impose administrative sanctions of $50,000.00 per kickback violation.  42 U.S.C. Section 1320a-7b.

48.     HHS has published safe harbor regulations that define practices that are not subject to prosecution or sanctions under the federal Anti-Kickback Statute because such practices would

be unlikely to result in fraud or abuse.  See 42 CFR Section 1001.952.  However, only those arrangements that precisely meet all of the conditions set forth in the safe harbor are afforded safe harbor protection.  None of the sales representatives commission arrangements at issue here meet those safe harbor regulations.

<b>The Federal False Claims Act</b>

49.     The Federal Claims Act (federal FCA) provides, in pertinent part:

c.      Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or uses, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false claim paid, is liable to the United States Government for a civil penalty of not less than $5500.00 but not more than $11,000, plus three times the amount of damages which the Government sustains because of the act of that person.

d.      For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

<b>COUNTS AS TO ALL PARTIES</b>

<b>COUNT 1<br>Violations of the False Claims Act</b>

50.     Plaintiff-Relator adopts and incorporates the previous paragraphs as though fully set forth herein.

51.     The Defendants conspired to violate the False Claims Act by inducing their sales representatives to artificially inflate the need for Arestin and Neutrasal prescriptions, by employing various unethical and illegal sales tactics, including strategic unbundling, presenting prescription medications as effective treatment for minor conditions where there was no medical necessity for the product (Neutrasal), teaching double billing techniques, by promoting the use of "master-copy" prescription sheets in prescriber offices to lower the difficulty of any office staff member to actually write prescriptions, and also by incentivizing sales representatives to get or write themselves prescriptions for the products they sold.

52.     In doing so, the Defendants caused the various sales representatives, clinics and prescribers under their control to violate the False Claims Act by allowing non-reimbursable claims to be processed and paid. This includes the use of "master-copy" prefilled out prescriptions used by non-legal prescribers, coaching double billing practices to prescribers, unbundling claims for Arestin, and coaching off-label, and medically unnecessary uses for Neutrasal prescriptions.

53.     Additionally, the company has violated the False Claims Act by encouraging sales representatives, especially those who were legal prescribers in their states, to write prescriptions for themselves and their families, which were also eligible to contribute towards their commission caps under the compensation plans, without regard to the medical necessity of these prescriptions, simply to increase company profit at the federal governments expense, to the extent these prescriptions involved federal funds directly or through co-insurance.

**COUNT 2**
**Violations of the Anti-Kickback Statute**

54.     Plaintiff-Relator adopts and incorporates the previous paragraphs as though fully set forth herein.

55.     Defendants illegally incentivized their representatives by payment of bonus and commissions outside of the safe harbor provisions of the Anti Kickback Statute. This is done by compensating sales representatives for prescriptions filled which touch or concern federal health care dollars.

56.     The volume of the total fraud at issue due to these violations may be ascertained by filtering out all Arestin Claims where "subsidy eligible" is "N" for no on the original claim spreadsheets (Composite Exhibit "A"), and where a sale has occurred. This isolates all transactions where federal funds are present, and a sale has occurred, and if the transaction is labeled as "commercial" due to the presence of a commercial co-insurer or PBM, the sales representative gets credit towards their commission plan. (*See* Exhibit "D"). This is despite the fact that these transactions involve partly or wholly federal health care funds.

57.     Likewise with Neutrasal, the Defendant pays its employed sales representatives commissions on all submissions regardless of whether an actual sale by filling the prescription occurs. As such, to detect all of these fraudulent transactions relating to kickbacks, one simply has to select all transactions from the original claim sheets (Composite Exhibit "B") where subsidy eligible is "N" for no, indicating that federal funds are present and no copay assistance is available. For all of these submissions sales representatives receive commission credit if the transaction is deemed commercial, even if federal funds or co-insurance with federal funds are involved. As previously stated, everytime a claim is deemed commercial due to the presence of a commercial co-insurer or commercial PBM, a sales representative is eligible for a commission, even despite the presence of federal funds, which violates the Federal Anti-Kickback Statute. (*See* Exhibit "D").

58.     Defendants also violated the Anti-Kickback Statute by hiring those already employed by prescribing doctors who wrote fillable prescriptions in order to maintain the company's relationships with prescribing physicians, and additionally encouraging sales representatives to write prescriptions for themselves and their families, for which there was no need, in order for them to receive additional commissions and make additional sales for the company. This scheme also occurred without regard for whether the sales representatives prescriptions were filled with funds touching or concerning federal resources. A compilation of some examples of Registered Dental Hygensists working prescriber's offices and for Valeant/OraPharma is attached hereto as Exhibit "E." This evidence was pulled from each of the subjects social media accounts, including Facebook.com and LinkedIn.com.

## COUNT 3
### Suppression, Fraud and Deceit

59.     Plaintiff-Relator adopts and incorporates the previous paragraphs as though fully set forth herein.

60.     Defendants misrepresented or suppressed the material fact that their prescriptions were valid and fillable by the pharmacies under their care and control.

61.     Defendants were legally obligated to communicate these material facts to the United States.

62.     The United States acted on Defendants' material misrepresentations described herein to its detriment.

63.     Defendants' fraudulent actions described herein have resulted in damage to the United States equal to the amount paid by the United States to Defendants as a result of the Defendants' fraudulent claims, together with the costs of resources diverted as a result of the Defendants' conduct.

**COUNT 4**
**Violation of California False Claims Act**
**Ca. Gov't Code §12650** *et seq.*

64.     Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

65.     This Count is brought by Relator in the name of the State of California under the *qui tam* provisions of the California False Claims Act, California Government Code §12651(a) *et seq.*

66.     Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of California.

67.     At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturers' drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

68.     By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of California, for Arestin and Neutrasal, and other drugs.

69.     As a result of the claims for reimbursement defendants caused to be submitted to California Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, California regularly made payments to pharmacies for Defendant Manufacturers' sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

70.     The amounts of the false or fraudulent claims to the State of California were, and remain material.

71.     Plaintiff State of California, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturers, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

## COUNT 5
### Violation of Conecticut False Claims Act,
### Connecticut General Statutes, Chapter 55e, §4-274 *et seq.*

72.     Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

73.     This Count is brought by Relator in the name of the State of Connecticut under the *qui tam* provisions of the Conecticut False Claims Act, Connecticut General Statutes, Chapter 55e, §4-274 *et seq.*

74.     Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Connecticut.

75.     At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both

state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

76.     By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Connecticut, for Arestin and Neutrasal, and other drugs.

77.     As a result of the claims for reimbursement defendants caused to be submitted to Connecticut Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Connecticut regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

78.     The amounts of the false or fraudulent claims to the State of Connecticut were, and remain material.

79.     Plaintiff State of Connecticut, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy

thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

## COUNT 6
### Violation of Colorado Medicaid False Claims Act
### Colorado Revised Statutes, § 25.5-4-304 *et seq.*

80.     Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

81.     This Count is brought by Relator in the name of the State of Colorado under the *qui tam* provisions of the Colorado Medicaid False Claims Act, Colorado Revised Statutes, § 25.5-304 *et seq.*

82.     Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Colorado.

83.     At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

84.     By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues

22

to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Colorado, for Arestin and Neutrasal, and other drugs.

85.      As a result of the claims for reimbursement defendants caused to be submitted to Colorado Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Colorado regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

86.      The amounts of the false or fraudulent claims to the State of Colorado were, and remain material.

87.      Plaintiff State of Colorado, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

## COUNT 7
### Violation of District of Columbia False Claims Act
### D.C. Code §2-30S.03 *et seq.*

88.      Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

89.      This Count is brought by Relator in the name of the District of Columbia under the *qui tam* provisions of the District of Columbia False Claims Act, D.C. Code §2-30S.03 *et seq*.

90.      Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the District of Columbia.

91.     At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments, including the District of Columbia.

92.     By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the District of Columbia, for Arestin and Neutrasal, and other drugs.

93.     As a result of the claims for reimbursement defendants caused to be submitted to District of Columbia Medicaid and other district health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, the District of Columbia regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and

fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

94.     The amounts of the false or fraudulent claims to the District of Columbia were, and remain material.

95.     Plaintiff District of Columbia, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 8**
**Violation of Florida False Claims Act**
**Fl. Stat. §§68.081-68.09**

96.     Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

97.     This Count is brought by Relator in the name of the State of Florida under the *qui tam* provisions of the Florida False Claims Act, Fl. Stat. §§68.081-68.09.

98.     Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Florida.

99.     At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal

and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

100.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Florida, for Arestin and Neutrasal, and other drugs.

101.    As a result of the claims for reimbursement defendants caused to be submitted to Florida Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Florida regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

102.    The amounts of the false or fraudulent claims to the State of Florida were, and remain material.

103.    Plaintiff State of Florida, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 9**
**Violation of Georgia State False Medicaid Claims Act**
**Ga. Code 49-4-168 *et seq.***

104.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

105.    This Count is brought by Relator in the name of the State of Georgia under the *qui tam* provisions of the Georgia State False Medicaid Claims Act, Ga. Code 49-4-168 *et seq.*

106.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Georgia.

107.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

108.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Georgia, for Arestin and Neutrasal, and other drugs.

109.    As a result of the claims for reimbursement defendants caused to be submitted to Georgia Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating

pharmacies and prescription benefit managers, Georgia regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

110.     The amounts of the false or fraudulent claims to the State of Georgia were, and remain material.

111.     Plaintiff State of Georgia, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

### COUNT 10
### Violation of Illinois Whistleblower Reward and Protection Act
### 740 ILCS *175/1 et seq.*

112.     Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

113.     This Count is brought by Relator in the name of the State of Illinois under the *qui tam* provisions of the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*

114.     Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Illinois.

115.     At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be

presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

116.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Illinois, for Arestin and Neutrasal, and other drugs.

117.    As a result of the claims for reimbursement defendants caused to be submitted to Illinois Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Illinois regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

118.    The amounts of the false or fraudulent claims to the State of Illinois were, and remain material.

119.    Plaintiff State of Illinois, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 11**
**Violation of Iowa False Claims Act**
**Iowa Code § 685.1 *et seq.***

120.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

121.    This Count is brought by Relator in the name of the State of Iowa under the *qui tam* provisions of the Iowa False Claims Act, Iowa Code § 685.1 *et seq.*

122.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Iowa.

123.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

124.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Iowa, for Arestin and Neutrasal, and other drugs.

125.    As a result of the claims for reimbursement defendants caused to be submitted to Iowa Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Iowa regularly made payments to pharmacies for Defendant

Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

126.    The amounts of the false or fraudulent claims to the State of Iowa were, and remain material.

127.    Plaintiff State of Iowa, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 12**
**Violation of Indiana False Claims and Whistleblower Act**
**Ind. Code §5-11-5.7-1** *et seq.*

128.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

129.    This Count is brought by Relator in the name of the State of Indiana under the *qui tam* provisions of the Indiana False Claims and Whistleblower Act, Indiana Code §5-11-5.7-1 *et seq.*

130.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Indiana.

131.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be

presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

132.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Indiana, for Arestin and Neutrasal, and other drugs.

133.    As a result of the claims for reimbursement defendants caused to be submitted to Indiana Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Indiana regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

134.    The amounts of the false or fraudulent claims to the State of Indiana were, and remain material.

135.    Plaintiff State of Indiana, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

## COUNT 13
### Violation of Louisiana Medical Assistance Programs Integrity Law
### La. Rev. Stat. §437 *et seq.*

136.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

137.   This Count is brought by Relator in the name of the State of Louisiana under the *qui tam* provisions of the Louisiana Medical Assistance Programs Integrity Law, Louisiana Revised Statute §437 *et seq.*

138.   Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Louisiana.

139.   At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

140.   By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Louisiana, for Arestin and Neutrasal, and other drugs.

141.   As a result of the claims for reimbursement defendants caused to be submitted to Louisiana Medicaid and other state health care programs, which were certified compliant with

federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Louisiana regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

142.   The amounts of the false or fraudulent claims to the State of Louisiana were, and remain material.

143.   Plaintiff State of Louisiana, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 14**
**Violation of Maryland False Claims Act**
**M.D. Code, Com. Law § 8-101**

144.   Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

145.   This Count is brought by Relator in the name of the State of Maryland under the *qui tam* provisions of the Maryland False Claims Act.

146.   Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Maryland.

147.   At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare,

Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

148.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Maryland, for Arestin and Neutrasal, and other drugs.

149.    As a result of the claims for reimbursement defendants caused to be submitted to Maryland Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Maryland regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

150.    The amounts of the false or fraudulent claims to the State of Maryland were, and remain material.

151.    Plaintiff State of Maryland, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 15**
**Violation of Massachusetts False Claims Act**
**Mass. Gen. Laws ch. 12 §5(A)**

152.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

153.    This Count is brought by Relator in the name of the State of Massachusetts under the *qui tam* provisions of the Massachusetts False Claims Act, Massachusetts General Laws, Chapter 12, §5(A) *et seq*.

154.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Massachusetts.

155.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

156.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly,

to officers, employees, or agents of the State of Massachusetts, for Arestin and Neutrasal, and other drugs.

157.    As a result of the claims for reimbursement defendants caused to be submitted to Massachusetts Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Massachusetts regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

158.    The amounts of the false or fraudulent claims to the State of Massachusetts were, and remain material.

159.    Plaintiff State of Massachusetts, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 16**
**Violation of Michigan Medicaid False Claims Act**
**Mich, Compo Laws §400.601 *et seq.***

160.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

161.    This Count is brought by Relator in the name of the State of Michigan under the *qui tam* provisions of the Michigan Medicaid False Claims Act, Michigan Compiled Laws §400.601 *et seq*.

162.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Michigan.

163.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

164.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Michigan, for Arestin and Neutrasal, and other drugs.

165.    As a result of the claims for reimbursement defendants caused to be submitted to Michigan Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Michigan regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

166. The amounts of the false or fraudulent claims to the State of Michigan were, and remain material.

167. Plaintiff State of Michigan, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 17**
**Violation of Minnesota False Claims Act**
**Minn. Stat. § 15C.01 *et seq.***

168. Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

169. This Count is brought by Relator in the name of the State of Minnesota under the *qui tam* provisions of the Minnesota False Claims Act, Minnesota Statutes § 15C.01 *et seq.*

170. Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Minnesota.

171. At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid

provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

172.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Minnesota, for Arestin and Neutrasal, and other drugs.

173.    As a result of the claims for reimbursement defendants caused to be submitted to Minnesota Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Minnesota regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

174.    The amounts of the false or fraudulent claims to the State of Minnesota were, and remain material.

175.    Plaintiff State of Minnesota, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 18**
**Violation of Nevada False Claims Act**
**Nev. Rev. Stat. §357.010 *et seq.***

176.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

177.     This Count is brought by Relator in the name of the State of Nevada under the *qui*

*tam* provisions of Nevada Revised Statutes §357.010 *et seq*, "Submission of False Claims to State

or Local Government."

178.     Valeant, at all times relevant to this action, sold and continues to sell

pharmaceuticals in the State of Nevada.

179.     At all times relevant and material to this Complaint, the Defendant Manufacturer

Valeant knowingly caused false claims for payment or approval, in the form of artificially

unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both

state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form

of a medication intentionally marketed to those who had no medical necessity for the drug, and

illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare,

Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be

presented to officers and employees of the federal and state governments. As a result, the federal

and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid

provider pharmacies sums of money grossly in excess of the amounts contemplated by law,

resulting in great financial loss to the federal and state governments.

180.     By virtue of the above-described acts, among others, Defendant Valeant knowingly

caused to be presented false or fraudulent claims for payment or approval, and possibly continues

to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly,

to officers, employees, or agents of the State of Nevada, for Arestin and Neutrasal, and other drugs.

181.     As a result of the claims for reimbursement defendants caused to be submitted to

Nevada Medicaid and other state health care programs, which were certified compliant with

federal and state Medicaid law and regulation as a condition of payment by participating

pharmacies and prescription benefit managers, Nevada regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

182.    The amounts of the false or fraudulent claims to the State of Nevada were, and remain material.

183.    Plaintiff State of Nevada, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 19**
**Violation of New Hampshire False Claims Act**
**N.H. Rev. Stat. §167:61-b** *et. seq.*

184.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

185.    This Count is brought by Relator in the name of the State of New Hampshire under the *qui tam* provisions of the New Hampshire False Claims Act, New Hampshire Revised Statutes §167:61-b *et seq*.

186.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of New Hampshire.

187.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare,

Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

188.     By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of New Hampshire, for Arestin and Neutrasal, and other drugs.

189.     As a result of the claims for reimbursement defendants caused to be submitted to New Hampshire Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, New Hampshire regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

190.     The amounts of the false or fraudulent claims to the State of New Hampshire were, and remain material.

191.     Plaintiff State of New Hampshire, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

## COUNT 20
### Violation of New Jersey False Claims Act

**N.J. Rev. Stat. § 2A:32C-1 et seq.**

192.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

193.    This Count is brought by Relator in the name of the State of New Jersey under the *qui tam* provisions of the New Jersey False Claims Act, New Jersey Revised Statutes § 2A:32C-1 *et seq*.

194.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of New Jersey.

195.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

196.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of New Jersey, for Arestin and Neutrasal, and other drugs.

197.   As a result of the claims for reimbursement defendants caused to be submitted to New Jersey Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, New Jersey regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

198.   The amounts of the false or fraudulent claims to the State of New Jersey were, and remain material.

199.   Plaintiff State of New Jersey, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

## COUNT 21
### Violation of New Mexico Medicaid False Claims Act
### N.M. Stat. §27-14-1 *et seq.*

200.   Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

201.   This Count is brought by Relator in the name of the State of New Mexico under the *qui tam* provisions of the New Mexico Medicaid False Claims Act, New Mexico Statute §27-14-1 *et seq.*

202.   Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of New Mexico.

203.   At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both

state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

204.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of New Mexico, for Arrestin and Neutrasal, and other drugs.

205.    As a result of the claims for reimbursement defendants caused to be submitted to New Mexico Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, New Mexico regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

206.    The amounts of the false or fraudulent claims to the State of New Mexico were, and remain material.

207.    Plaintiff State of New Mexico, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy

thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

## COUNT 22
### Violation of New York False Claims Act
### N.Y. St. Finance Law §187 *et seq.*

208.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

209.    This Count is brought by Relator in the name of the State of New York under the *qui tam* provisions of the New York False Claims Act, New York State Finance Law § 187 *et seq*.

210.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of New York.

211.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

212.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly,

to officers, employees, or agents of the State of New York, for Arestin and Neutrasal, and other drugs.

213.     As a result of the claims for reimbursement defendants caused to be submitted to New York Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, New York regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

214.     The amounts of the false or fraudulent claims to the State of New York were, and remain material.

215.     Plaintiff State of New York, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 23**
**Violation of North Carolina False Claims Act**
**N.C. Gen. Stat. § 1-605 et seq.**

216.     Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

217.     This Count is brought by Relator in the name of the State of North Carolina under the *qui tam* provisions of the North Carolina False Claims Act, North Carolina General Statutes § 1-605 *et seq.*

218.     Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of North Carolina.

219.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

220.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of North Carolina, for Arestin and Neutrasal, and other drugs.

221.    As a result of the claims for reimbursement defendants caused to be submitted to North Carolina Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, North Carolina regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

222.    The amounts of the false or fraudulent claims to the State of North Carolina were, and remain material.

223.    Plaintiff State of North Carolina, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 24**
**Violation of Okalahoma Medicaid False Claims Act**
**Okla. Stat. tit. 63 §5053 et seq.**

224.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

225.    This Count is brought by Relator in the name of the State of Oklahoma under the *qui tam* provisions of the Oklahoma Medicaid False Claims Act, Oklahoma Statute, Title 63, § 5053 *et seq*.

226.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Oklahoma.

227.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid

provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

228.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Oklahoma, for Arestin and Neutrasal, and other drugs.

229.    As a result of the claims for reimbursement defendants caused to be submitted to Oklahoma Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Oklahoma regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

230.    The amounts of the false or fraudulent claims to the State of Oklahoma were, and remain material.

231.    Plaintiff State of Oklahoma, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

## COUNT 25
## Violation of Rhode Island State False Claims Act
### R.I. Gen.Laws 1956, § 9-1.1-1

232.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

233.    This Count is brought by Relator in the name of the State of Rhode Island under the *qui tam* provisions of the Rhode Island State False Claims Act, Rhode Island General Laws 1956 § 9-1.1-1 *et seq.*

234.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Rhode Island.

235.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

236.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Rhode Island, for Arestin and Neutrasal, and other drugs.

237.    As a result of the claims for reimbursement defendants caused to be submitted to Rhode Island Medicaid and other state health care programs, which were certified compliant with

federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Rhode Island regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

238.    The amounts of the false or fraudulent claims to the State of Rhode Island were, and remain material.

239.    Plaintiff State of Rhode Island, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 26**
**Violation of Tennessee Medicaid False Claims Act**
**Tenn. Code. §71- 5-181 *et seq.***

240.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

241.    This Count is brought by Relator in the name of the State of Tennessee under the *qui tam* provisions of the Tennessee Medicaid False Claims Act, Tennessee Code § 71-5-181 *et seq.*

242.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Tennessee.

243.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and

illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

244.   By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Tennessee for Arestin and Neutrasal, and other drugs.

245.   As a result of the claims for reimbursement defendants caused to be submitted to Tennessee Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Tennessee regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

246.   The amounts of the false or fraudulent claims to the State of Tennessee were, and remain material.

247.   Plaintiff State of Tennessee, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

## COUNT 27
### Violation of Texas Medicaid Fraud Prevention Act
### Tx. Hum. Res. Code, §36.001 *et seq.*

248.    Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

249.    This Count is brought by Relator in the name of the State of Texas under the *qui tam* provisions of the Texas Medicaid Fraud Prevention Act, Texas Human Resources Code § 36.001 *et seq.*

250.    Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Texas.

251.    At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

252.    By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Texas, for Arestin and Neutrasal, and other drugs.

253. As a result of the claims for reimbursement defendants caused to be submitted to Texas Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Texas regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

254. The amounts of the false or fraudulent claims to the State of Texas were, and remain material.

255. Plaintiff State of Texas, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

**COUNT 28**
**Virginia Fraud Against Taxpayers Act**
**Va. Code §8.01-216.1 et seq.**

256. Plaintiffs reallege and incorporate by reference Paragraphs 1-63 set forth above.

257. This Count is brought by Relator in the name of the State of Virginia under the *qui tam* provisions of the Virginia Fraud Against Taxpayes Act, Virginia Code § 8.01-216.1 *et seq*.

258. Valeant, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Virginia.

259. At all times relevant and material to this Complaint, the Defendant Manufacturer Valeant knowingly caused false claims for payment or approval, in the form of artificially unbundled medications and illegal kickbacks paid to sales representatives for claims billed to both state and federal medicare, Medicaid, and other health care programs for Arrestin, and in the form

of a medication intentionally marketed to those who had no medical necessity for the drug, and illegal kickbacks paid to sales representatives for claims billed to both state and federal Medicare, Medicaid, and other health care programs as it relates to Neutrasal as specified herein, to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments paid reimbursements for the Defendant Manufacturer's drugs to Medicaid provider pharmacies sums of money grossly in excess of the amounts contemplated by law, resulting in great financial loss to the federal and state governments.

260.   By virtue of the above-described acts, among others, Defendant Valeant knowingly caused to be presented false or fraudulent claims for payment or approval, and possibly continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees, or agents of the State of Virginia, for Arestin and Neutrasal, and other drugs.

261.   As a result of the claims for reimbursement defendants caused to be submitted to Virginia Medicaid and other state health care programs, which were certified compliant with federal and state Medicaid law and regulation as a condition of payment by participating pharmacies and prescription benefit managers, Virginia regularly made payments to pharmacies for Defendant Manufacturer's medications sold in illegal and fraudulent manners, including the use of unbundling schemes and selling drugs which were not medically necessary.

262.   The amounts of the false or fraudulent claims to the State of Virginia were, and remain material.

263.   Plaintiff State of Virginia, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant Manufacturer, and in reliance on the accuracy

thereof paid and may continue to pay for the Defendant Manufacturer's medications under these fraudulent schemes.

WHEREFORE, Plaintiff – Relator demands judgment in their favor on behalf of the United States and themselves and against Defendants pursuant to 31 U.S.C. Section 3732 in an amount sufficient to compensate the United States for Defendants' fraud, suppression and deceit, together with punitive damages in an amount calculated to deter Defendants from engaging in such conduct in the future, along with attorneys' fees, costs, interest, and any other, further or different relief to which Plaintiffs – Relators may be entitled.

Dated: August 17th, 2017.

/s/ John W. Roberts_____
John W. Roberts, Esq.
Stephen E. Syfrett, Esq. (admission pending)
*Counsel to Relators*
12273 Emerald Coast Parkway, Suite 204
Miramar Beach, Florida 32550
Ph: 850-250-0887 | Fax: 850-250-2612
john@johnwrobertslaw.com

**RELATOR DEMANDS A TRIAL BY STRUCK JURY**

## CERTIFICATE OF SERVICE

On this 17th day of August 2017, Plaintiff – Relator hereby certifies that in compliance with Rule 4 of the Federal Rules of Civil Procedure, service of the Qui Tam Complaint has been executed as follows:

By Certified Mail to:

United States Attorney's Office
Middle District of Florida
400 W. Washington Street
Suite 3100
Orlando, Fl. 32801

Attorney General of the United States of
America
Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

California Attorney General
Office of the Attorney General
1300 "I" Street
Sacramento, CA 95814-2919

Connecticut Attorney General
Office of the Attorney General
55 Elm Street
Hartford, CT 06106

Colorado Attorney General
Office of the Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Building
1300 Broadway, 10th Floor
Denver, CO 80203

District of Columbia Attorney General
Office of the Attorney General
441 4th Street, NW,
Washington, DC 20001

Florida Attorney General
Office of Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050

Georgia Attorney General
Office of the Attorney General
40 Capitol Square, SW
Atlanta, GA 30334

Illinois Attorney General
Office of the Attorney General
Chicago Main Office
100 West Randolph Street
Chicago, IL 60601

Indiana Attorney General
Indiana Government Center South
302 W Washington St, 5th Floor,
Indianapolis, IN 46204

Iowa Attorney General
Office of the Attorney General of Iowa
Hoover State Office Building
1305 E. Walnut Street
Des Moines IA 50319

Louisiana Attorney General
Office of the Attorney General
1885 North Third Street
Baton Rouge, LA 70802

Maryland Attorney General
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202

Massachusetts Attorney General
Office of Massachusetts Attorney General
One Ashburton Place
Boston, MA 02108

Michigan Attorney General
Office of the Attorney General
G. Mennen Williams Building, 7th Floor
525 W. Ottawa St.
P.O. Box 30212
Lansing, MI 48909

Minnesota Attorney General
Office of the Attorney General
445 Minnesota Street,
Suite 1400
St. Paul, MN 55101-2131

Nevada Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701

New Hampshire Attorney General
Office of the Attorney General
33 Capitol Street
Concord, NH 03301

New Jersey Attorney General
Office of the Attorney General
RJ Hughes Justice Complex
25 Market Street, Box 080
Trenton, NJ 08625-0080

New Mexico Attorney General
Office of the Attorney General
201 3rd Street NW, #300,
Alburquerque, NM 87102

New York Attorney General
Office of the Attorney General
The Capitol
Albany, NY 12224-0341

North Carolina Attorney General
Attorney General's Office
9001 Mail Service Center
Raleigh, NC 27699-9001

Oklahoma Attorney General
Office of the Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Rhode Island Attorney General
Office of the Attorney General
150 South Main Street
Providence, Rhode Island 02903

Tennessee Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202-0207

Texas Attorney General
Office of the Attorney General
300 West 15th Street
Austin, Texas, 78701

Virginia Attorney General
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219

/s/ John W. Roberts
JOHN W. ROBERTS